```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| BENJAMIN KAMINECKI, DAVID KAMINECKI, STACEY EDELMAN-KAMINECKI, and JOSHUA EDELMAN, | HON. JEROME B. SIMANDLE |
| | Civil No. 04-1494 (JBS) |
| Plaintiffs, | |
| v. | **OPINION** |
| SCOTTSDALE INSURANCE COMPANY, | |
| Defendant. | |

APPEARANCES:

W. Dana Venneman, Esq.
LAW OFFICES OF JAMES P. SAVIO
9220 Amherst Ave., 1st Floor
P.O. Box 3163
Margate, NJ 08402
   Attorney for Plaintiffs

George A. Prutting, Jr., Esq.
PRUTTING & LOMBARDI
701 South White Horse Pike
Audubon, NJ 08106
   Attorney for Defendant

**SIMANDLE**, District Judge:

   This matter comes before the Court upon a motion by Plaintiffs Benjamin Kaminecki, David Kaminecki, Stacey Edelman-Kaminecki, and Joshua Edelman ("Kamineckis") to compel the advancement of defense costs from their insurer, Defendant Scottsdale Insurance Company. For the reasons discussed herein, the motion will be denied without prejudice.

I.  **BACKGROUND**

A.  Procedural History

The instant motion relates to the underlying case of Jackson v. Kaminecki, No. 02 Civ. 2405 (D.N.J.).  In the Jackson case, Plaintiff Sean Jackson, an employee of the Strand Corporation[1], was injured while working within the scope of his employment on August 16, 2000.  (Pl. Br. at 1.)  Jackson was an attendant on an amusement park ride called "Chaire Ride" (a/k/a "Monster Mash Haunted House Ride"), an adult roller coaster, and fell between two moving cars, severing his leg.  (Pl. Br. at 1.)

On November 19, 2001, Jackson was approved to receive workers' compensation benefits for the injuries he suffered as a Strand employee.  Jackson, slip op. at 6.  Thereafter, on May 14, 2002 Jackson filed suit against the Kamineckis[2] and others in this Court alleging, inter alia, claims of strict liability, intentional misconduct and negligence.  Id.

---

[1] The Strand Corporation owned and operated amusement park rides on the Boardwalk in Wildwood, New Jersey.  Jackson v. Kaminecki, No. 02 Civ. 2405, see Opinion filed December 17, 2004 at 3-4 (hereafter "slip op.").

[2] Benjamin Kaminecki is sued in his official capacity as President of the Strand Corp.  (Pl. Br. at 1.)  David Kaminecki is sued in his official capacity as owner of the amusement park ride, "Chaire Ride".  (Pl. Br. at 2.)  Stacey and Joshua Edelman "managed, assembled, inspected, controlled and/or possessed" the "Chaire Ride."  (Compl. of Sean Jackson at ¶ 14, dated May 20, 2002.)

2

The Kamineckis requested their insurer, Scottsdale Insurance Co., to provide a defense[3] for them in the Jackson case, but Scottsdale refused. (Pl. Br. at 2.) Scottsdale bases its refusal to defend the Kamineckis on the grounds that the insurance policy excludes coverage for "intentional wrong[s]" and "bodily injury to an employee" which are precisely what Jackson complains of in the underlying dispute. (See Def. Ex. B.) Scottsdale further refuses to provide a defense for the Kamineckis because the insurance company believes there to be serious material misrepresentations on the Kaminecki's insurance application. (See Def. Ex. D.) Plaintiff maintains that the above exclusions are not relevant in the Jackson matter and the Kamineckis are entitled to past and future defense costs incurred in litigating the Jackson case. (Pl. Br. at 5-6.)

On March 31, 2004, the Kamineckis filed the pending lawsuit against Scottsdale Insurance requesting a declaratory judgment as to Scottdale's duty to defend the Kamineckis in the Jackson case. [Docket Item 1.] On November 20, 2004, Plaintiffs filed the instant motion to compel payment of future and previously incurred defense costs "until such time as the declaratory judgment action can be resolved on its merits." (Pl. Br. at 7.)

---

[3]Scottsdale Insurance Company agreed to maintain "the right and duty to defend the insured against any suit seeking [specifically named] damages. (Pl. Br. Ex. C.)

## II.  **DISCUSSION**

A.  <u>Choice of Law</u>

Defendant contends that New Jersey law should be applied to any disputes arising out of the language of the insurance contract.  (Def. Br. at 6-7.)  However, Plaintiff only presents Pennsylvania law in support of his motion for advancement of defense costs.  (<u>See</u> Pl. Br. at Ex. D.)

As a federal court sitting in diversity, this Court is obligated to apply the choice of law rules of the forum state – in this case, New Jersey.  <u>See</u> <u>Klaxon Co. v. Stentor Elec. Mfg.</u>, 313 U.S. 487 (1941).  More importantly, in cases involving interpretation of liability insurance contracts "the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy." <u>State Farm Mutual Auto Insurance Co. v. Simmons' Estate</u>, 84 N.J. 28, 37 (1980) (interpreting choice of laws in the context of automobile liability contracts).  In <u>State Farm</u>, the New Jersey Supreme Court further held that:

> [T]he law of the place of the contract
> ordinarily governs the choice of law because
> this rule will generally comport with the
> reasonable expectations of the parties
> concerning the principal situs of the insured
> risk during the term of the policy and will
> furnish needed certainty and consistency in
> the selection of the applicable law.

<u>Id.</u>

Here, the Plaintiff Kamineckis are the executives of the Strand Corp., with its principal place of business in Wildwood, New Jersey. (Compl. at ¶ 3.) Furthermore, the insurance policy was executed in New Jersey and specifically states: "This insurance is issued pursuant to the N.J. Surplus Lines Law." (Def. Ex. A.) Following the explicit language of the contract and the lex loci delicti[4], the instant motion will be adjudged according to New Jersey law.

B. Application of New Jersey Law

Plaintiffs have cited to no New Jersey precedent for their motion, and New Jersey law is to the contrary. An insurer has a duty to defend its insureds on any claims brought that are within the scope of the insurance contract. The duty to defend is "determined by whether the allegations set forth in the complainant's pleadings fall within the purview of the policy language," not based upon the merits of the claims. LCS Inc. v. Lexington Insurance Co., 371 N.J. Super. 482, 490 (N.J. Super. Ct. App. Div. 2004.); see Ohio Casualty Insurance Co. v. Flanagin, 44 N.J. 504, 512 (1965). In cases where "multiple alternative courses of action are set forth," such as the case sub judice, "the duty to defend will continue until every covered claim is eliminated." Id. This problem is resolved by merely

---

[4] As described supra, the actual accident, which is being disputed in the underlying dispute of Jackson v. Kaminecki, took place in Wildwood, New Jersey.

comparing the language of the Complaint to that of the insurance contract to adjudge whether the allegations "give rise to a claim which may constitute a risk covered by the policy." Ohio Casualty, 44 N.J. at 514; see Danek v. Hommer, 28 N.J. Super. 68, 77 (N.J. Super. Ct. App. Div. 1953.)

In the event that an insured believes the insurer is obligated to provide a defense and the insurer declines responsibility, the insured has two likely options: (1) following the adjudication of the claim against the insured, an action may be brought against the insurance carrier for reimbursement of defense costs or (2) as here, seek a declaration of the insurer's duty to defend before the trial against the insured begins. Burd v. Sussex Mutual Insurance Co., 56 N.J. 383, 391 (1970).

Here, Plaintiffs have elected to file suit against Scottsdale Insurance to declare liability on the part of the insurer.  (See Compl. at ¶ 15.)  Plaintiffs argue that Scottsdale Insurance should advance the defense costs associated with the litigation of Jackson prior to a final judgment in the pending declaratory judgment action.  (Pl. Br. at 7.)  However, no such relief exists under New Jersey law.  The only remedy now available to the Kamineckis is to wait until a final judgment has been made declaring Scottsdale's liability in the underlying dispute; thereafter, the Kamineckis can request a reimbursement of the fees already incurred and future defense expenses.  See

6

Gerhardt v. Continental Insurance Co., 48 N.J. 291, 300 (1966). If Plaintiffs believe there to be "no genuine issue as to any material fact" and that they are "entitled to a judgment as a matter of law," then the appropriate course of action would be to file a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Neither party regards the present motion as one for summary judgment.

Plaintiff proffers only one non-precedential case, Associated Electric & Gas Insurance v. Rigas, 2004 WL 838140 (E.D. Pa. 2004), in support of the motion for advancement of defense costs. (Pl. Br. Ex. D.) As in the present case, the insureds in Rigas instituted a declaratory judgment action following an insurer's refusal to defend them in various civil suits. Rigas, 2004 WL 838140 at *1. Although the insurance carrier was ordered to make payments of defense costs to the insureds, that case is easily distinguished from the case at hand. In the Rigas case, the insureds appropriately moved for summary judgment to declare the liability of the insurance carrier, whereas Plaintiffs here have not filed such a motion. Id. Short of obtaining summary judgment, even the Rigas case does not suggest a basis for obtaining interim relief.

**CONCLUSION**

For the above stated reasons, the Court will deny Plaintiff's motion for advancement of defense costs without prejudice, and entertain an appropriate motion for summary judgment if filed.  The accompanying Order will be entered.

| | |
|---|---|
| **August 4, 2005** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | United States District Judge |